Ronald Ryan
Ronald Ryan PC
Attorney for Debtors
1413 E Hedrick Dr
Tucson AZ 85719
(520)298-3333 ph 743-1020 fax
ronryanlaw@cox.net
AZ Bar #018140  Pima Cty #65325

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA TUCSON DIVISION

| | |
|---|---|
| In re: | Case No.  09-8977-TUC-JMM |
| HENRY GALLARDO and ANNETTE M GALLARDO | |
| Debtor/Respondent | **RESPONSE TO MOTION FOR RELIEF FROM STAY** |
| vs | |
| WELLS FARGO HM MORTGAGE | Chapter 13 |
| Movant | |

COMES NOW, HENRY GALLARDO and ANNETTE M GALLARDO, Debtor, and files this Response to  Motion for Relief from Stay, filed by  WELLS FARGO HM MORTGAGE, Movant, and present unto the Court as follows:

1. This chapter 13 case was commenced by the filing of a petition on 4/29/2009.  The Plan in this case has not yet been confirmed.

2. Debtor generally denies that Movant is entitled to Relief from the Automatic Stay, or denies that it is appropriate in this case.  Debtor admits to signing a note and a deed of trust for purposes of security and that the original investor is owed funds, but that this obligation has probably been rendered unsecured.  Movant demands to know who owns the note, who holds the note and how much is owed to that owner, because

it has undoubtedly been paid in part by third party sources. Upon information and belief, there is a well founded suspicion or certain knowledge that Movant does not have standing to enforce the note, and/or that there has been a failure to join indispensable parties. Debtors demands strict proof that: the endorsements were made to the proper entities; all endorsements were properly executed; properly executed at the appropriate time by the appropriate parties and not made subsequently in order to clean up the facial appearance of the documents; that Movant is the real party in interest and has the right to enforce the note for its own benefit, or that if it does so in a representative capacity that it has appeared in that capacity and not in its own name. Furthermore, the loan has been securitized. Such being the case, there are further complications that are not even close to being resolved by the exhibits filed by Movant. Any party acting on behalf of a Securitized Mortgage Trust have actual full and complete authority has been accorded to the Trustee by the terms of the Pooling and Service Agreement and by a sufficient percentage of the certificate holders in said Trust. Full authority to act on behalf of the Trust must include the authority to enter into compromise settlements in litigation. Furthermore, the authority must be in accordance with the terms of the Bond Indenture of the bond held by the owner of the note, which is the investor that funded the loan. Only the investor has the right to enforce the note. Additionally, even if there is a trust of pooled mortgage obligations, there must be proof of a chain of title not only to the legal documents consisting of the note and deed of trust, but also a chain of consideration paid to the bondholder that initially funded the loan. Movant must produce the original note. Expert testimony is that 40% of the notes in securitized trusts have been intentionally destroyed. It has been common to see cases in which major financial institutions, which can include banks, mortgage

companies, loan servicers and etcetera, have presented to Courts notes that had fabricated endorsements. The original note must be produced complete with original endorsements made by the proper party. The "Lender" in the Deed of Trust, New Freeeom Mortgage Company, never provided funding for the loan, but merely arranged the loan, and acted as pass-through entity between the funding source, normally a mortgage bond trust, and the Debtor. The Bond Indenture for this bond trust must also be produced.

3. During the process of securitization and its aftermath, there were a number of routine practices that had the effect of rendering the mortgage loans unsecured as a matter of law. One such practice was to separate ownership of the note from the deed of trust, particularly in a state that does not have a statute that specifically deems the security interest to follow the beneficial ownership of the note.

> When the note is split from the deed of trust, "the note becomes, as a practical matter, unsecured." RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.4 cmt. a (1997). A person holding only a note lacks the power to foreclose because it lacks the security, and a person holding only a deed of trust suffers no default because only the holder of the note is entitled to payment on it. See RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.4 cmt. e (1997). "Where the mortgagee has 'transferred' only the mortgage, the transaction is a nullity and his 'assignee,' having received no interest in the underlying debt or obligation, has a worthless piece of paper." 4 RICHARD R. POWELL, POWELL ON REAL PROPERTY, § 37.27[2] (2000).

In re Mitchell, supra at 8. Another event or state of affairs that has rendered mortgage loans unsecured as a matter of law is when there has been a separation of legal title to the note and equitable ownership of the note, in cases where the note has been satisfied in favor of the equitable owner owner of the note by a 3rd party that is not the holder of legal title to the note. Because of the commonality of such events during the securitization years, Movant must also prove that the loan was not rendered unsecured

either because the note and deed of trust were separated at some point, or because the loan was paid off to the provider of the original funding or an entity subsequent in the chain of consideration, by a third party source, such as a bond insurer, including credit default swap insurance, other default insurance, private mortgage insurance, bail out funding, or through a cross-collateralization source. If the original funding source or its privity were paid off by a third-party source and not the entity claiming to be the holder of the note, the holder merely holds at best an unsecured promissory note.

4.      The vast majority of notes and deeds of trust entered into between the years 2001 and 2007 was securitized at some point. These loans are most of the time not being enforced by the real party in interest nor any party with standing to enforce the note in the form of stay relief, nor otherwise to sue or be sued on behalf of the real party in interest. Upon information and belief Movant does not have standing to enforce the note in this action, because it is not the real party in interest and/or does not enough actual authority to qualify for standing, and/or does not have actual possession of the note. The vast majority of notes and deeds of trust entered into between the years 2001 and 2007 was securitized at some point. Expert testimony is that all loans involving Mortgage Electronic Registration Systems ("MERS") were securitized, as was the loan in this case. These loans are most of the time not being enforced by the true party in interest nor any party with standing to enforce the note in the form of stay relief, nor otherwise to sue or be sued on behalf of the true party in interest. Upon information and belief Movant does not have standing to enforce the note in this action, because it is not the true party in interest and/or does not enough actual authority to qualify for standing, and/or does not have actual possession of the note.

5.      Movant does not have standing to bring this Motion and the real true

party in interest must be joined in this proceeding before a motion for relief from stay can be entertained by the Court.  See for example, *In re Kang Jin Hwang* 396 B.R. 757 (Bankr.C.D.Cal.2008); *In re Vargas*, 396 B.R. 511 (Bankr.C.D.Cal., 2008).  The right to enforce a note on the noteholder's behalf does not convert the noteholder's agent into a real party in interest.  *Id.* at 396 B.R. at 767, quoting 6A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1553; *In re Jacobson*, 402 B.R. 359, 366 (Bankr. W.D.Wash., 2009).  The holder of the note and not the servicer or the collecting agent, must be the moving party, and the party to whom relief is granted, and must be so named in the pleadings.  *Id; Kang Jin Hwang, supra;  Vargas, supra.*  Pursuant to FRCP 17(a) and 19(a), applicable via Rules 9014, 7017 and 7019, the true party in interest is the only party that can proceed in this action on behalf of the beneficiary of the note in question and their joinder is required.   A federal court's jurisdiction is dependant upon the standing of the litigant, which includes both constitutional standing and prudential standing.  *Valley Forge Christian Coll. v. Am. United for Separation of Church and State*, 454 U.S. 464, 472 (1982); *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

> Constitutional standing under Article III requires, at a minimum, that a party must have suffered some actual or threatened injury as a result of the defendant's conduct, that the injury be traced to the challenged action, and that it is likely to be redressed by a favorable decision.

*Id; United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 551 (1996); *Jacobson, supra* at p. 11.  Constitutional standing is a requirement of Article III of the Constitution, is a threshold jurisdictional requirement, and cannot be waived.  *Pershing Park Villas Homeowners Ass'n v. United Pacific Ins. Co.*, 219 F.3d 895, 899-900 (9th Cir. 2000); *Jacobson, supra* at p. 12.

A litigant must also have "prudential standing," which stems from rules of practice limiting the exercise of federal jurisdiction to further considerations such as orderly management of the judicial system. *Pershing Park*, 219 F.3d at 899-900; *In re Godon*, 275 B.R. 555, 564-565 (Bankr. E.D. Cal. 2002) *(citing Bender v. Williamsport Area Sch.* Dist., 475 U.S. 534, 541-42 (1986).

*Id.* Prudential standing requires that a plaintiff must assert "his own legal interests as the real party in interest," *Dunmore v. United States*, 358 F.3d 1107, 1112 (9 Cir. 2004), as found in FED. R. CIV. P. 17, which provides "[a]n action must be prosecuted in the name of the real party in interest. Furthermore, FED. R. CIV. P. 19 requires mandatory joinder of every person with an interest in the note if not doing so could lead to inconsistent results in different proceedings affecting the same subject matter. *Kang Jin Hwang, supra* at 7.

The exclusion of these unidentified parties is particularly important in this proceeding. It is highly unlikely that FHM has kept the promissory note: most likely, it sold the note into the market for mortgage securitization.· In consequence, it is quite unlikely that MERS is an authorized agent of the holder of the note here at issue. By adding these unidentified movants, MERS is trying to obtain relief from the automatic stay for the current note holders without disclosing to the court their existence, identities or the source of MERS's authority to act on their behalf. This is improper.

*In re Vargas*, 396 B.R. 511, 516 (Bankr. C.D. Cal. 2008). And an attorney-in-fact that merely has agency relationship for the purpose of bringing suit is only a nominal party and not the true party in interest. 6A *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* §1553 (2d ed. 1990). Foreclosure agents and servicers must prove they have authority to act for a party that has standing. *In re Scott*, 376 B.R. 285 290 (Bankr. D. Idaho 2007); *Kang Jin Hwang*, 396 B.R. at 767; *Jacobson, supra* at 12. A nominee or agent must also show that has actual authority from the true party in interest to act on its behalf and it cannot be assumed that it continues to have such

authority even if granted it in the original deed of trust. See *In re Mitchell*, Memorandum Opinion, p.8, BK-S-07-16226-LBR, (Bky. D.NV. 2008). *Mitchell* was designated as the lead case for Motions to Lift Stay filed by MERS in 28 cases, listed by case number therein, in which an order for joint briefing was issued because the issues were substantially the same. Prior to oral argument MERS attempted to withdraw all but 4 of the motions. The mere fact that a party, such as MERS, is named as the beneficiary in a deed of trust is insufficient to enforce the obligation. It must truly be the beneficiary or join the true beneficiary in the action. Many documents contain statements that admit that MERS or the servicer is not the true beneficiary. They also contain contradictory statements stating that they are the beneficiary in one place and that it is only the nominee in another. Under Arizona law, the person that holds a note is the one that may enforce the note, absent one of two exceptions not pertinent here. ARS § 47-3301. In Arizona a deed of trust may be used to secure performance of an obligation, and the "beneficiary" is the person for whose benefit the deed of trust is given or their assignee. ARS § 47-33-801(1), (8). An entity named as the beneficiary on a deed of trust or who has been assigned the deed of trust may not enforce it if not the holder of the note.

> If a note has been securitized into a pooling trust, the trustee may enforce the note. "If a loan has been securitized, the real party in interest is the trustee of the securitization trust, not the servicing agent. See *LaSalle Bank N.A. v. Nomura Asset Capital Corp.*, 180 F.Supp.2d 465, 469-71 (S.D.N.Y.2001) (" *LaSalle-Nomura* "); accord, *LaSalle Bank N.A. v. Lehman Bros. Holdings, Inc.*, 237 F.Supp.2d 618, 631-34 (D.Md.2002) ("*LaSalle-Lehman* ").

*Kang Jin Hwang, supra* at 766. But caution should be used here because it is important to see the document that created the Trustee relationship to the pooling trust, because often there is explicit language in said documents that limits the powers of the

Trustee and thus the Trustee does not have actual authority to act on behalf of the Trust.  Also, as discussed, just because a pooling trust claims to be the true party in interest, and may even have the original note properly endorsed and the deed of trust assigned to it, does not mean that it holds anything more than a facially effective claim to enforcement which will fall apart after the facts are known, because at some point the original funding source or its privity were paid off by a third-party source and not the entity claiming to be the holder of the note, and/or because the note and deed of trust were previously owned by separate parties, or because the party now seeking to enforce the note has been paid off by a third party source, such as a credit default swap obligee, other insurance, bail out funds, or a cross-collateralization source.

6.     Additionally, even assuming arguendo that a pool trustee has power to act on behalf of a trust and that the trust is the true party in interest, if a power of attorney is presented to a Court that purports to grant authority from the trustee of a pooling trust to act on its behalf, the Court needs a properly offered copy of the pooling and servicing agreements, to verify that the servicing agent may proceed on behalf of Movant.  Because lenders, servicers and the like hold all the evidence and have trustors at a great advantage, particularly in the context of the unbelievable complications brought into the system by securitization and the identity of the investors and noteholders is kept confidential from borrowers, even though this is contrary to statute.  Therefore it is crucial that parties seeking to enforce notes be required to produce all the evidence necessary to prove their case, and that the rules of evidence be strictly enforced.

Additionally, if a power of attorney is presented to this Court and it refers to pooling and servicing agreements, the Court needs a properly offered copy of the pooling and servicing agreements, to determine if the servicing agent may

proceed on behalf of plaintiff. (*EMC Mortg. Corp. v. Batista*, 15 Misc.3d 1143(A) [Sup Ct, Kings County 2007]; *Deutsche Bank Nat. Trust Co. v. Lewis*, 14 Misc.3d 1201(A) [Sup Ct, Suffolk County 2006]).

*HSBC Bank USA, N.A. v Valentin*, 1/30/2008, 18 Misc 3d 1123(A), 2008 NYSlipOp 50164(U), ¶ 3.  Again, as the facts of these transactions are coming to light, a copy of the pooling and servicing agreements, and of the document, if separate, that sets forth the terms of the powers of the Trustee to the pool, because even the Trustee may not have the powers to act on behalf of the Trust, let alone the servicing agent for the Trustee of the pool.

7.    There have been many reported instances that have brought the veracity and authenticity of documents in mortgage foreclosure cases into doubt.  And there are generally gapping holes in proof of the history of ownership and assignments of the notes and in the proof of their chain of custody, that would be necessary to fairly prove the identity of the true party in interest and its connection to the party seeking to act on its behalf are so glaring, there must be compliance with the Rules of Evidence, such as those for competency of witness, personal knowledge, hearsay and authenticity, not to mention matters such as relevance of factual assertions contained in documents, and sufficiency of proof.  Many of the cases cited herein strictly enforced the evidentiary rules in these cases, because various facts in the cases placed the veracity of the documentary evidence in doubt.  For example, *In re Mitchell*, supra at 13-14; *In re Vargas*, 396 B.R. 511, 517 (Bankr. C.D. Cal. 2008).

> At a minimum, there must be an unambiguous representation or declaration setting forth the servicer's authority from the present holder of the note to collect on the note and enforce the deed of trust. If questioned, the servicer must be able to produce and authenticate that authority.

Jacobson at 18.  A further development has come to light that makes even these

requirements insufficient. The fact is that the original mortgage bonds that were sold to produce the actual funding for the loans are the real investors and are the true party in interest, and these bondholders are the same persons and entities that hold interests in the securitized pooled mortgages. Therefore, it is necessary not only to obtain pooling and servicing agreements, the document that gave the Trustee of a pool whatever powers it has to act on behalf of the pool, but also a copy of the bond indenture specific to the loan being sought to be enforced, and proof of a chain of ownership of the original funding bond leading to the pool or other person or entity seeking to enforce the note and deed of trust in a Motion for Relief from stay, or other litigation involving the note.

        8.     *Nosek v Ameriquest* et al (Fed D Mass 2009)(Case 4:08-cv-40095-WGY), supra, is a District Court decision in its second trip up the appellate ladder from a Bankruptcy Court adversary proceeding. This questions raises extremely serious matters to which every mortgage company, servicer, Trustee to a pool, and all attorneys involved ought to pay real attention. The mortgage entities seeking to enforce a note and deed of trust, and their attorneys were sanctioned severely for not investigating and revealing to the Court the real nature of the mortgage company's interest in the note, nor of their real authority to enforce them. A copy of the case is attached as it has not yet been published. It is not doubtful that Attorneys involved in enforcing mortgages have not been aware of the true nature of the facts pertaining to the securitized loans they enforce. If the nature of the transactions were apparent, the economy would not have been nearly destroyed by the loss of trust in the system that arose when facts pertaining to them began to come to the awareness of the investing persons and entities. But *Nosek v Ameriquest* et al, Id, provides guidance that a greater standard of

investigation and disclosure to the Court is required due to the prevailing states of affairs.

9.      Securitzed mortgages were a brain child of Wall Street. Bonds were sold to persons and entities to obtain ownership of shares in mortgage backed debt obligations before those debts ever came into existence. The persons purchasing the bonds were the true investors. The relationship between the bondholders and the persons that have ownership in the pool series of certificates that are claiming to be the true owners of the obligations is in doubt and likely varies widely. One scenario is that there are persons that purchased interests in these pools after the fact, and that none of that money was actually used to fund the loans, and that at least some of the funds that were tendered to purchase interests in pools never made their way to the bondholders, or initial investors. The creators of many of these MBS, generally investment banks, called "Sponsors," to sell fraudulent products. It was common for them to obtain three times the amount of funding from the original investors than the amount that was actually loaned. This led to false collection and enforcement by servicing companies doing so for their own benefit, and even if legal title to the notes appears accurate they do not have the equitable ownership thereof.

10.     Though Movant has the burden of proof on the matters discussed above, Debtor retained the services of Neil Garfield, M.B.A., J.D., and Brad Keiser, M.B.A., Mortgage Compliance Research and Analysis Forensic Experts, Foreclosure Defense Group ("FDG"). FDG will on Debtor's behalf, in conjunction with Debtor's Attorney, immediately file a "Qualified Written Request" (QWR) directly upon the Movant/Defendant and/or true party in interest, and send a demand letter challenging the Lender or other parties associated with the mortgage loan transaction with any

"Documented Violations and Fraud Findings," that are found.  Pursuant to Federal Law, as set forth in the Real Estate Settlement Procedures Act (RESPA), enforcement of the mortgage should be stayed pending complete response to the "Qualified Written Request" (QWR) by Movant/Defendant and/or the true party in interest, even in the unlikely event it can otherwise satisfy the requirements for stay relief.  This is because the veracity of the documents involving securitized loans has been cast into doubt by experience within the judicial system.  The QWR should serve and will serve, by virtue of a further filing by Debtor, as a substitute for some or all of the discovery permitted Debtors by the Bankruptcy Rules and the Federal Rules of Civil Procedure, namely interrogatories, requests for production and requests for admission.  Though the number of one or more of these may exceed the number presumptively considered reasonable, the fact that the federal RESPA statute deems these inquiries reasonable, is apt cause for the Court to rule that the same be answered, in the event they are challenged by Movant, or the true party interest.  Other services that FDG will perform include: examination, analysis, review and representative sampling to determine if the closing procedures and documents on the subject loan(s) reveal Discrepancies, Potential Violations of Federal or State Law or Administrative Rules and/or Regulations, including but not limited to Fraud or other potential claims such as: Excessive Fees and Charges by the Broker and/or Lender, Deceptive Predatory Lending Practices, and or other Fraudulent Abusive Mortgage related issues.  FDG will prepare a report to the Lender based on the documents Client(s) provide to FDG.  After completing the audit FDG will prepare a Complaint Report containing the conclusions.  It is likely that the true party in interest is responsible for numerous violations of State and Federal Law that could subject it to serious financial and other liabilities that exceed the face value of

the note. It has often been speculated among many commentators that this is the reason true parties in interest do not appear in these cases. For if they did, it would amount to an admission that it is the holder in due course in a consumer real estate transaction, which would make it liable for the actions of all prior holders of the note and other causes of action, such as malfeasance performed by agents of the true party in interest and those of its predecessors. Debtor will then likely file an adversary proceeding alleging various causes of action, which may include a quiet title action, and /or other irregularities, making enforcement by Movant and/or the true party in interest impossible. Causes of action that are not atypical to transactions, such as that involved in this case include: Failure to Join Indispensable Parties; Standing; Reconveyance; Payment; Offset; Failure to Record --- Condition Precedent; Fraud in the Inducement; Fraud in the Execution; Rescission; Reconveyance; Slander of Title; Breach of Fiduciary Duty; Fraud in the Inducement; Fraud in the Execution; Negligence; Negligent Supervision; Appraisal Error or Fraud; Unconscionable Predatory Lending Practices; Unjust Enrichment; Identification Theft; Deceptive Practices; False Advertising; Securities Fraud; Constructive Trust on Profits; Breach of Privacy, as well as statutory causes of action under the following federal statutes, HOEPA; RESPA; TILA; RICO, and possibly a quiet title action. Debtor asks that even if the true party in interest were to be joined in this case and the proof required as set forth herein were provided, Debtor asks that the action be tolled pending the results of their investigation and complete and full responses to discovery have been received, as well as additional time for the investigative report to be completed and time to prepare the adversary complaint.

11.     The bottom line is that, unbelievable as it may seem, the majority of

the securitzed mortgages written in the approximate time frame of 2001-2007 can be rendered completely unsecured, which in the context of a bankruptcy proceeding means that the Debtors would end up with a free house, absent the interest of the bankruptcy estate in the amount of equity above the maximum exemption allowed by law.  This is the end result when the law is applied to the facts, when all the facts are known.  But there is no denying that Debtors signed a note and a deed of trust and that they obtained at least the illusion that they were they had accomplished the dream of home ownership.  On the other hand, mortgage loan payments made in the past and those that will be made in the future are paid to entities that do not deserve it because they never paid a dime that went to the purchase of the home in question.  And the same is true for the homes these entities foreclosed upon in the past and those they will foreclose upon in the future.  They were unjustly enriched.  The question then is whether the homeowner or some financial institution that never funded the loan nor compensated the source of the funding for the privilege of enforcing the notes and deeds of trust is less deserving.  Debtors believe they should pay for their home.  And it is good public policy to keep families in their homes.  A reasonable result is that families keep their homes, but at a price they can afford.  Given the equities, the consensus among consumer advocates at present is that 80% of the home's current value paid over 30 years at a 4% fixed rate of interest strikes the proper balance.  All persons and business entities have an interest in the economy succeeding and functioning in a way that works for everyone.  Debtor has had the property professionally appraised and the value according thereto is $125,000.00.  Debtor moves to make adequate protection payments, pursuant to the above formula, during the pendency of the investigation discovery process into a special account to be held until the adversary proceeding to be

filed and the motion for relief from stay are resolved at final hearing on the merits. Applying this formula, the monthly adequate protection payment would be $477.42, representing principle and interest. These funds can be paid through the Trustee and Debtor is willing to pay the Trustee's standard commission on these reduced adequate protection payments, or Debtors' attorney can hold these payments in trust.

12.     Debtor further moves that the litigation on the primary mortgage be handled separately from the Debtor's Plan, such that Debtor's plan can be confirmed prior to the resolution of the litigation involving the mortgage. Regardless of whether Debtor wins or loses, the Plan and its terms will be unaffected.

WHEREFORE, PREMISES CONSIDERED, Debtor and Plaintiff asks that this Court require the real party in interest to appear as a party to this proceeding, and to present strict proof that it is the real party in interest, or has full and sufficient authority to act on behalf of the real party in interest, as well as proof of all required elements as set forth above, with strict application of the Rules of Evidence, and based upon the extraordinary circumstances in today's economy, stay further action pending the response required by federal law to the Qualified Written Request, and that Movant's motion be denied, and granting Debtor an opportunity to file an adversary complaint when the above described information is obtained by Debtor, and for such other and further relief as is just.

Dated, July 28, 2009.

Respectfully submitted,
/S/ Ronald Ryan
Ronald Ryan, Debtor's Counsel

### CERTIFICATE OF SERVICE

I certify that on July 28, 2009, a true copy of the forgoing was emailed to: Attorneys for WELLS FARGO HM MORTGAGE, Leonard McDonald, Tiffany & Bosco; Chapter 13 Trustee; and Debtor.

/s/ Ronald Ryan
Ronald Ryan